[Civ. No. 1389.   Fourth Appellate District.—April 9, 1936.]

PETE B. SUPERA, Appellant, v. MORELAND SALES CORPORATION (a Corporation) et al., Respondents.

Kelso, Berryman, Grua & Counts for Appellant.

Richard J. O. Culver for Respondents.

JENNINGS, J.—The plaintiff instituted this action against the defendants to recover from them the cost of repairs made to a certain truck which had been purchased by plaintiff from the defendants and damages for deprivation of the use of said truck during the time the repairs were being made. It was alleged in plaintiff's complaint that the property damage which plaintiff suffered was caused by the negligence of defendants in failing properly to overhaul and recondition the truck and in installing defective parts therein prior to plaintiff's purchase of the same. Trial of the action took place before the court without a jury and resulted in the entry of

a judgment in favor of defendants from which plaintiff has perfected this appeal.

Appellant contends that the findings of the trial court are irreconcilably conflicting and that they are not supported by the evidence. Proper consideration of these contentions requires a statement of the facts which were developed by the evidence.

On September 27, 1931, appellant purchased from respondent Sam Tobias a certain Moreland motor truck described as model B 7. At the time the sale to appellant was effected Tobias was branch manager for respondents Moreland Sales Corporation and Moreland Motor Truck Company in the city of Bakersfield. As part of the purchase price appellant turned in another truck which he owned and paid the remainder of the price in cash. The truck which appellant thus purchased was a used truck which had been reconditioned by the Moreland Motor Truck Company at its factory in Burbank, California. When the sale was made Tobias stated to appellant that the truck carried a thirty-day guarantee which he testified meant that the material of which the truck was composed was in good condition, rear end in good condition, and transmission in good condition; that the entire truck was in good condition and that it was guaranteed so to remain for a period of thirty days after the sale. On October 6, 1931, appellant was operating the truck which contained a load consisting of ten steers. He was then driving the vehicle along a rough road. About 10:30 at night he arrived at a place where the road made a turn to the right which was immediately followed by a turn to the left. At this time appellant was driving the truck at a speed of approximately twelve to fifteen miles per hour. He negotiated the first turn successfully, but in attempting to make the second turn was unable to steer the vehicle properly, with the result that the truck proceeded straight ahead and overturned in a ditch at the side of the road causing the damage which necessitated repairs to the truck and the consequent deprivation of use. Examination of the steering mechanism of the truck which was made after the occurrence of the accident disclosed that the drag link and pitman arm were disconnected and that the set screw in the end of the drag link, which holds the pitman arm and drag link properly connected was unscrewed to a point where it was held in the drag link by only two or three

threads. The unscrewing of the set screw had so released the tension on the connections of the pitman arm and drag link as to permit the pitman arm to slip out of its socket in the end of the drag link. It further appeared that the key holes on the sides of the drag link which were formed for the purpose of receiving a cotter pin or key were filled with grease and paint and that the cotter pin was absent. The cotter pin was necessary to prevent unscrewing of the set screw. Appellant had driven the truck a distance of approximately 110 miles from the date of purchase until the occurrence of the accident. The appellant testified that about fifteen or twenty minutes before the accident occurred he heard a rattle or dull sound which seemed to come from the bottom of the truck and that he stopped the vehicle, alighted from the driver's compartment, placed himself beneath the truck and with the aid of a flashlight examined the bottom part of the truck; that this examination did not disclose to him that anything was wrong, whereupon he resumed his place in the driver's compartment and continued on his way. This witness further testified that, at no time prior to the time he found that he was unable to steer the truck properly, had he felt any lost motion in the steering wheel and that he did not again hear the rattle after he had brought the truck to a stop and examined it from underneath as above described. He also testified that no part of the truck had been greased by him or by anyone employed by him after it was delivered to him and prior to the occurrence of the accident. Appellant's testimony as above set out was in no respect contradicted.

The trial court found that the appellant lost control of the truck when the pitman arm and the drag link became disengaged and that the disengagement of these parts was caused by the fact that the set screw at the end of the drag link became partly unscrewed and that the cause of this condition was the absence of a cotter pin to hold the set screw in place. The court next found that the drag link and pitman arm and the movable parts which hold the drag link and pitman arm in place and likewise the set screw were all in good condition immediately preceding and at the time of the accident. It is impossible to reconcile this last finding with the immediately preceding finding that the cotter pin whose function was to hold the set screw in place was absent at the time of the accident. If the cotter pin, whose function in

the steering mechanism of the vehicle was so important, was missing, it is difficult to understand how the trial court could have found that the drag link and pitman arm and movable parts which hold the drag link and pitman arm in place were "all in good condition immediately preceding and at the time of the accident" in view of the uncontradicted evidence which showed that the key holes provided for the reception of the cotter pin were filled with grease and paint.

■ However, further examination of the findings discloses that the court found that appellant was an experienced driver of motor trucks at the time of the accident and was familiar with the operation of the motor truck in question and consequently that he knew or should have known within a reasonable period of time before his arrival at the scene of the accident by the exercise of reasonable care that the set screw was gradually becoming loose as he drove the truck along the road "due to the gradually increasing lost motion necessarily caused thereby in the steering wheel which he held in his hands".

Analysis of the last-mentioned finding indicates that it is thereby found that appellant should have sooner discovered that the set screw was becoming loose because of the gradually increasing lost motion which was "necessarily caused thereby" in the steering wheel. The basis of this finding is therefore that there was gradually increasing lost motion in the steering wheel which should have informed appellant that the steering mechanism was out of order. There is not a scintilla of evidence in the record to support a finding that there was any lost motion in the steering wheel. On the contrary, the testimony of appellant that he felt no lost motion in the steering wheel and that the wheel which he held with both hands did not shake at all in his hands stands uncontradicted. There is therefore positive uncontradicted evidence which the trial court was not at liberty to disregard which showed that the fact which the court found must have given warning to appellant of the gradual loosening of the set screw did not exist.

■ The court next found that appellant "was therefore negligent in not stopping and ascertaining within a reasonable period of time before arriving at the place of the accident the faulty condition then existing, and his negligence in failing so to do was the sole proximate cause of the acci-

dent''. This finding is likewise obviously dependent on the existence of a fact which the evidence entirely fails to show did exist, viz.: that there was lost motion in the steering wheel.

■ The final finding of the trial court is that appellant's allegations of negligence are untrue and the allegations of respondents as to appellant's negligence are true.

It is our conclusion that the last-mentioned finding is lacking in evidentiary support. It is clear that the action brought by appellant is one sounding in tort and that recovery was sought from respondents for their alleged negligence in reconditioning and overhauling the truck which they sold to appellant. In order to succeed appellant was required to show, first, that respondents owed him a duty; second, that they failed to perform the duty, and, third, that their failure to perform resulted in the damage which appellant sustained. We think that appellant successfully sustained the burden. It may not be contended with any hope of success that respondents did not owe to appellant the duty of providing him with a motor truck which was in all respects in good condition and would so remain for a period of thirty days. That the failure to install a cotter pin in the place provided for it in the drag link was a breach of this duty is obvious. That the absence of the cotter pin was the direct cause of the failure of the steering mechanism to function properly, which failure caused the truck to overturn is too clear to permit of any intimation to the contrary.

■ Finally,' it is contended that, assuming that respondents were negligent, nevertheless since the trial court has found that appellant was himself negligent and that his negligence was the proximate cause of the accident, therefore the judgment in respondents' favor must be affirmed because the trial court has in effect convicted appellant of contributory negligence which precludes any recovery by him.

The difficulty with this reasoning is that, as above indicated, the finding of negligence on appellant's part is based on the existence of a fact which the evidence wholly failed to show did exist, viz.: loss of motion in the steering wheel. So far as the evidence shows the only fact that tended in the slightest degree to inform appellant that something was wrong with the truck was the rattle or dull sound which ap-

peared to him to emanate from beneath the floor board of the vehicle. The evidence indicates that he took prompt action to attempt to discover the source of the noise by bringing the truck to a stop and by placing himself underneath the vehicle and by examining it with the aid of a flashlight. It is true that he admitted on cross-examination that, although he looked at the steering mechanism when he was underneath the truck, he did not take hold of any part of it and that his examination consisted of merely looking at the bottom of the truck when he was beneath it. However, we cannot discover from the evidence that he was under any obligation to make more detailed examination than he did. It is significant also that appellant's uncontradicted testimony is that, after the visual examination was concluded, he did not again hear the rattle as he proceeded on his way.

Our conclusion that the trial court's findings are lacking in evidentiary support is fortified by the record showing that the trial court granted appellant's motion for a new trial on the grounds of insufficiency of the evidence to justify the decision in favor of respondents and that the decision was contrary to law. Unfortunately for appellant the order granting a new trial was not made until after the expiration of the sixty-day period succeeding the date on which notice of entry of judgment was given. At the time the trial court granted the motion, therefore, its power to pass upon it had expired and it was deemed denied by operation of law. (Sec. 660, Code Civ. Proc.) Notwithstanding the fact that the trial court's action came too late to bring about a new trial of the action, the inclusion of evidentiary insufficiency to sustain the judgment as a ground for granting the motion is indicative of an appreciation by the trial court that its findings of fact are fatally lacking in evidentiary support.

The judgment from which this appeal has been taken is therefore reversed.

Barnard, P. J., and Marks, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on May 7, 1936.